UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-61337-CIV-COHN/SELTZER

KEITH TAYLOR,

    Plaintiff,

v.

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE PLAINTIFF'S CAUSATION EXPERTS

**THIS CAUSE** is before the Court upon Defendant Novartis Pharmaceutical Corporation's Daubert Motion to Exclude Causation Testimony of Plaintiff's Expert Witnesses in the Taylor Case [DE 28-70] at 12-14 ("Motion").[1]  The Court has carefully considered the Motion, Defendant's Memorandum of Law in support thereof [DE 28-70] at 15-38 ("Defendant's Mem."), Plaintiff's Corrected Response [DE 28-73] at 168-194 ("Response"), Defendant's Reply [DE 28-74] at 197-202 ("Reply"), all of the parties submissions[2], the argument of counsel at the January 4, 2013 hearing, and is otherwise fully advised in the premises.

---

[1] The docket entry numbers refer to the docket entries number in this Court's docket rather than the docket in the Middle District of Tennessee.  Because docket entries in this case contain multiple documents, the Court has given page numbers from this docket, rather than the original pagination of the documents, to more precisely identify which pages the Court refers to.

[2] This includes the full text of the deposition of Dr. Vistasb Broumand.  The Court requested that Defendant file the complete transcript because the excerpts provided by the parties were insufficient for the Court to determine whether Dr. Broumand's causation testimony was sufficiently reliable.  See DE 38, 39.

I. BACKGROUND

Plaintiff Keith Taylor ("Plaintiff") originally filed a complaint in this Court against Defendant Novartis Pharmaceuticals Corporation ("Defendant") on September 1, 2006. Complaint [DE 1].  The Judicial Panel on Multidistrict Litigation ("JPML") subsequently removed the case to the Middle District of Tennessee for consolidated pretrial proceedings with similarl actions brought against Defendant by other plaintiffs.  See Conditional Transfer Order [DE 9, 10].  On September 5, 2012, the JPML signed a conditional remand order which remanded this case to this Court.  Conditional Remand Order [DE 11].  At the time of remand, the instant Motion was fully briefed, but unresolved by the MDL court.

In the Complaint, Plaintiff alleges that after treatment with Aredia and Zometa, drugs produced and marketed by Defendant, he suffered osteonecrosis, or bone death, of the jaw.  Compl. ¶ 1.  Plaintiff received Aredia and Zometa, Food and Drug Administration approved bisphosphonates, as part of his treatment for multiple myeloma.  Id. ¶¶ 2, 6.  Plaintiff contends that despite its knowledge regarding jaw problems with patients who had taken Aredia and/or Zometa, Defendant failed to warn doctors until September 2004 and dentists until May 2005 about the risk of osteonecrosis of the jaw ("ONJ").  Id. ¶ 8.  Plaintiff also alleges that Defendant failed to initiate studies regarding risks associated with Aredia and Zometa, id. ¶ 9, fully test the products to ensure they were safe for their intended purpose, id. ¶ 10, and conduct dosing studies to establish minimum effective doses.  Id. ¶ 11.  Plaintiff brings claims against Defendant for strict liability, negligence-failure to warn, and breach of implied

warranty.³

In the Motion, Defendant seeks to exclude the testimony of Plaintiff's various disclosed specific causation experts. Defendant asserts that "[n]one of plaintiff's retained or non-retained experts can offer expert testimony that meets the threshold admissibility standards of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and Federal Rule of Evidence 702 that Aredia® or Zometa® caused Mr. Taylor's alleged ONJ." Motion at 12. Plaintiff opposes the Motion.

## II. DISCUSSION

### A. Legal Standard.

Federal law governs whether "expert testimony proffered to prove causation is sufficiently reliable to submit it to the jury." Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005) (noting that in diversity cases, the Federal Rules of Evidence govern the admissibility of evidence in federal court). Under Federal Rule of Evidence 702:

> [i]f scientific ... knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has stated that district court judges perform "a

---

³ Additional claims for negligent manufacture, strict liability based on manufacturing defect, and breach of express warranty were dismissed pursuant to the parties' stipulation on June 18, 2012. See June 18, 2012 Order [DE 28-71] at 89.

3

gatekeeping role" regarding admissibility of expert testimony.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

The Eleventh Circuit has established a three part test for evaluating the admissibility of expert testimony under which the district court must assess whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Hendrix ex rel G.P. v. Evenflo Co., 609 F.3d 1183, 1994 (11th Cir. 2010) (citing United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)).  "The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong."  Id. (citing Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care, 582 F.3d 1227, 1232 (11th Cir. 2009)).

### B. Non-Retained, Treating Experts.

Defendant moves to exclude specific causation testimony from several of Plaintiff's treating physicians.  Motion at 12.  Defendant argues that the specific causation testimony from Plaintiff's treating physicians (Dr. Todd Sawisch, Dr. James Driscoll, Dr. Irving Bratt, Dr. Nelson Zide, Dr. Kevin Ohayon, Dr. Howard Cunningham, and Dr. Frederick Wittlin) should be excluded because each treating physician lacks the expertise necessary to opine on whether Plaintiff's treatment with Areda and/or Zometa caused his ONJ.  Defendant's Mem. at 26.  Defendant also argues that Plaintiff's treating physicians should be excluded from offering specific causation testimony

because they cannot offer reliable causation opinions. Id. at 28. In opposition, Plaintiff argues that the testimony of Dr. Wittlin, Dr. Driscoll, and Dr. Zide should be admitted because "[t]here [sic] diagnoses, treatment, and perceptions are all admissible as are their changes in practice in the wake of the BRONJ epidemic." Response at 192. Plaintiff separately argues that the testimony of Dr. Sawisch should be admissible because he is both qualified and properly utilized a differential diagnosis to establish causation. Id. at 185-86.[4] The Eleventh Circuit has held that when a treating physician offers an opinion regarding causation, the opinion "fall[s] within Federal Rule of Evidence 702's scope of 'scientific knowledge' and must satisfy Daubert." Wilson v. Taser Int'l, Inc., 303 Fed. Appx. 708, 713 (11th Cir. 2008). Accordingly, the Court will assess whether the testimony of each treating physician is admissible under Daubert and Eleventh Circuit precedent.

### 1. Plaintiff Concedes that Drs. Irving Bratt, Kevin Ohayon, and Howard Cunningham May Not Offer Specific Causation Testimony.

As Defendant points out in its Reply, Plaintiff's Response is silent as to the admissibility of causation testimony from Drs. Bratt, Ohayon, and Cunningham. See Reply at 197 n.1. Because the burden of establishing the admissibility of their

---

[4] In his response, Plaintiff requests that "the Court state that Dr. Broumand and Dr. Sawisch can testify directly to cause, and that the other physicians who are experts in that they are physicians or dental providers and may testify as to the facts of [plaintiff's] symptoms, tests, diagnosis and treatment, as to what they did in response to [his] condition and as to what they would have done differently, if anything, had they known of additional warnings." Response at 173 (citations and quotations omitted). The sole issue before the Court, however, is whether Plaintiff may elicit causation testimony from any of these experts. Motion at 13. Accordingly, the Court's ruling will be confined to whether each expert can offer testimony regarding the causation of Plaintiff's ONJ. This Order should not be construed as permitting or prohibiting any other testimony Plaintiff seeks to elicit from these experts.

testimony falls solely upon the Plaintiff, the proponent of the testimony, the Court finds that Drs. Bratt, Ohayon, and Cunningham are excluded from offering any testimony regarding the causation of Plaintiff's ONJ.  See Hendrix ex rel G.P., 609 F.3d at 1994.

### 2. Dr. Frederick Wittlin May Not Offer Testimony Regarding the Specific Causation of Plaintiff's ONJ.

Defendant seeks to exclude the causation testimony of Plaintiff's oncologist, Dr. Wittlin.  Defendant argues that Dr. Wittlin is not qualified to testify regarding the cause of Plaintiff's ONJ because he disclaimed expertise in both ONJ and the causes of ONJ. Defendant's Mem. at 17 (citing Excerpts from the Deposition of Dr. Frederick Wittlin, Exhibit 4 to Defendant's Motion ("Wittlin Dep.") [DE 28-70] at 74-75).[5]  Dr. Wittlin also testified that "he would not be able to testify with medical certainty that Mr. Taylor's bisphosphonate use caused his alleged ONJ." Id. at 18 (citing Wittlin Dep. [DE 28-70] at 72.)[6]  In his Response, Plaintiff generally argues Dr. Wittlin should be permitted to rule out chemotherapy drugs as the cause of Plaintiff's ONJ.  Response at 191. Plaintiff's argument in support of Dr. Wittlin's testimony misses the mark.  Defendant has not sought to exclude the testimony of Dr. Wittlin generally.  Rather, Defendant seeks to exclude any testimony from Dr. Wittlin that Plaintiff's ONJ was caused by his use of Aredia or Zometa.  See Defendant's Mem. at 1.  Dr. Wittlin's own deposition testimony clearly demonstrates that he is not qualified to offer any testimony regarding the cause of Plaintiff's ONJ.  Accordingly, the Court will exclude any causation

---

[5]   The page and line designations from the cited portion of the deposition transcript are 67:23-68:8.

[6]   The page and line designations from the cited portion of the deposition transcript are 61:20-24.

testimony from Dr. Wittlin.

At his deposition, Dr. Wittlin testified that he has never prepared any publications on Zometa, other bisphosphonates, or ONJ.  Excerpts from the Deposition of Dr. Frederick Wittlin, Exhibit 5 to the Second Declaration of John J. Vecchione, Esquire in Support of Plaintiffs' Opposition to Defendant's Motions to Exclude Plaintiff's Experts and Summary Judgment ("2d Vecchione Decl.") [DE 28-73] at 83.[6]  Dr. Wittlin also clearly testified that he was unsure whether the use of bisphosphonates is related to ONJ and stated that he could not testify with any degree of medical certainty as to the cause of Plaintiff's ONJ.  Id. at 98.[7]

Although a proposed expert's own assertion that he is not an expert, standing alone, will not per se disqualify an individual as an expert, Harvey, 2012 WL 471309, at *4[8], where the record demonstrates that a particular expert is not qualified to opine in a particular area, the testimony should be excluded under Daubert.  Parmentier v. Novartis Pharm. Corp., No. 1:12-CV-45 SNLJ, 2012 WL 2326047, at *4 (E.D. Mo. June 19, 2012).  Plaintiff has failed to meet his burden of demonstrating that Dr. Wittlin's knowledge and experience as an oncologist renders him qualified to testify as an expert as to the cause of Plaintiff's ONJ.  Thus, Dr. Wittlin is precluded from offering any

---

[6]     The page and line designations of the cited portions of the deposition transcript are 21:2-12.

[7]     The page and line designations of the cited portions of the deposition transcript are 61:4-24.

[8]     The Sixth Circuit has stated that "while a putative expert's self-assessment is not dispositive as to whether he or she meets the requirements of Rule 702, it is one factor that district court's may consider when determining if his or her testimony is sufficiently reliable."  Thomas v. Novartis Pharm. Corp., 443 Fed. Appx. 58, 61 (6th Cir. 2011).

specific causation testimony.  See In re Aredia & Zometa Prods. Liab. Litig., No. 11-5053, 2012 WL 2016249, at *5 (6th Cir. June 5, 2012) (affirming district court's exclusion of causation testimony of treating physician expert who was unable to opine that there was a "cause-and-effect relationship between bisphosphonate exposure and ONJ"); Thomas, 443 Fed. Appx. at 62 (affirming district court's exclusion of treating physician causation expert where plaintiff failed to make a connection between the doctor's experience and bisphosphonate induced ONJ); Hill v. Novartis Pharm. Corp., No. 1:06-cv-003939-AWI-DLB, 2012 WL 5451800, at *2 (E.D. Cal. Nov. 7, 2012) (excluding specific causation testimony of treating physician where plaintiff failed to demonstrate the treating doctor was qualified to offer an opinion to a reasonable degree of medical certainty that there is a connection between bisphosphonates and the plaintiff's ONJ); Luttrell v. Novartis Pharm. Corp., – F. Supp. 2d –, No. 07-CV-3015-TOR, 2012 WL 4513109, at *5-*7 (E.D. Wash. Oct. 1, 2012) (excluding expert causation testimony from plaintiff's treating physicians where plaintiff failed to support that treating physicians could offer opinions regarding causation of plaintiff's ONJ to a reasonable degree of medical certainty); Parmentier, 2012 WL 2326047, at *4 (same).

### 3. Dr. James Driscoll May Not Offer Testimony Regarding the Specific Causation of Plaintiff's ONJ.

Defendant also seeks to exclude specific causation testimony from Dr. James Driscoll, an oral and maxillofacial surgeon who treated Plaintiff, because he "disclaimed expertise in ONJ, including the potential causes, diagnosis, and treatment of ONJ." Defendant's Mem. at 18 (citing Experts from the Deposition of Dr. James Driscoll,

8

Exhibit 5 to Defendant's Motion ("Driscoll Dep.") [DE 28-70] at 85-86).[9]  Defendant also argues that Dr. Driscoll did not diagnose Plaintiff with ONJ and testified that he could not offer an opinion within a reasonable degree of medical certainty as to what caused Plaintiff's ONJ.  Id. (citing Driscoll Dep [DE 28-70] at 84, 86-87.[10]  In opposition, Plaintiff argues that "Dr. Driscoll can speak on expected dental problems."  Response at 24.

For many of the same reasons discussed above regarding Dr. Wittlin, the Court will also exclude any specific causation testimony from Dr. Driscoll.  Plaintiff's argument that Dr. Driscoll should be permitted to provide testimony regarding Plaintiff's anticipated dental problems fails to address the thrust of Defendant's Motion: whether Dr. Driscoll should be permitted to testify regarding the causation of Plaintiff's ONJ.  The record before the Court is clear that Dr. Driscoll does not have relevant knowledge regarding the cause of Plaintiff's ONJ.  Driscoll Dep [DE 28-70] at 86 (Q. "If you were called to testify in this case, would you offer an opinion within a reasonable degree of medical certainty as to what caused Mr. Taylor's alleged ONJ? A. I would not know that answer.")[11]  Dr. Driscoll did not diagnose Plaintiff with ONJ.  Driscoll Dep [DE 28-70] at 84.[12]  Plaintiff also concedes that Dr. Driscoll was not familiar with Zometa prior to his preparation for his deposition.  Response at 180 (citing Excerpts of the Deposition of

---

[9] The page and line designations from the cited portions of the deposition transcript are 46:25-47:21.

[10] The page and line designations from the cited portions of the deposition transcript are 44:12-16 and 47:11-48:5.

[11] The page and line designations from the cited portions of the deposition transcript are 47:16:24.

[12] The page and line designations from the cited portions of the deposition transcript are 44:12-16.

Dr. James J. Driscoll, Exhibit 6 to the 2d Vecchione Decl. [DE 28-73] at 107).[13] Accordingly, the Court agrees with Defendant that Dr. Driscoll should be precluded from providing any testimony regarding the cause of Plaintiff's ONJ.

### 4. Dr. Nelson Zide May Not Offer Testimony Regarding the Specific Causation of Plaintiff's ONJ.

Defendant also moves to exclude the specific causation testimony of Dr. Nelson Zide, an infectious disease specialist, because Dr. Zide "admitted that he is not an expert on ONJ, including the diagnosis, causes, and risk factors of ONJ." Defendant's Mem. at 19 (citing Excerpts of the Deposition of Dr. Nelson Zide, Exhibit 8 to Defendant's Motion ("Nelson Dep.") [DE 28-70] at 118, 119, 120).[14] Plaintiff contends that Dr. Zide should be allowed to testify because he "is an expert in infectious disease." Response at 192. Dr. Zide's qualifications as an expert on infectious disease are not presently before the Court. At issue is whether Dr. Zide is qualified to testify as to the cause of Plaintiff's ONJ. Dr. Zide's undisputed testimony is that he does not have relevant knowledge regarding the diagnosis and causes of ONJ. See Nelson Dep. at 118, 119, 120. Because Plaintiff has failed to proffer any additional information regarding Dr. Zide's qualifications to render such testimony, the Court will grant Defendant's Motion and exclude any testimony from Dr. Zide regarding the cause of Plaintiff's ONJ.

---

[13] The page and line designations from the cited portions of the deposition transcript are 10:11-13.

[14] The page and line designations from the cited portions of the deposition transcript are 7:10-17; 32:8-25; 36:4-15.

### 5. Dr. Todd Sawisch May Not Offer Testimony Regarding the Specific Causation of Plaintiff's ONJ.

Defendant contends that Dr. Todd Sawisch, an oral and maxillofacial surgeon, should be precluded from testifying regarding the cause of Plaintiff's ONJ because he "denied relevant experience and/or expertise pertaining to ONJ and bisphosphonates." Defendant's Mem. at 27 (citing Excerpts from the Deposition of Dr. Todd Sawisch, Exhibit 3 to Defendant's Motion ("Sawisch Dep.") [DE 28-70] at 53-55; 56).[15]  Defendant also contends that Dr. Sawisch cannot offer a reliable causation opinion because he denied that he diagnosed Plaintiff with ONJ. Defendant's Mem. at 28. Plaintiff argues that Dr. Sawisch should be permitted to testify regarding the causation of Plaintiff's ONJ because he "utilized a differential diagnosis method for concluding that Mr. Taylor's ONJ was caused by bisphosphonates." Response at 186. Plaintiff also argues that Dr. Sawisch's failure to rule out other possible causes of Plaintiff's ONJ goes to the weight rather than the admissibility of his testimony. Id. at 188.

The Court finds that Plaintiff has failed to meet his burden of demonstrating that Dr. Sawisch is qualified to offer an opinion regarding the cause of Plaintiff's ONJ. Dr. Sawisch has never lectured on ONJ and bisphosphonates. Sawisch Dep. [DE 28-70] at 53-54.[16]  Nor has Dr. Sawisch ever published on ONJ or bisphosphonates. Id. at 54-55.[17]  This lack of expertise coupled with Dr. Sawisch's own admission that he does not

---

[15]  The page and line designations from the cited portions of the deposition transcript are 19:24-20:4; 20:22-21:7; 41:22-42:4.

[16]  The page and line designations from the cited portions of the deposition transcript are 19:24-20:4.

[17]  The page and line designations from the cited portions of the deposition transcript are 20:22-21:7.

11

consider himself an ONJ expert and could not state with a reasonable degree of medical certainty the cause of Plaintiff's ONJ demonstrate that he is not qualified to render an opinion as to the cause of Plaintiff's ONJ.  See Sawisch Dep [DE 28-70] at 56-57.[18]

Without even reaching Defendant's argument that Dr. Sawisch denied diagnosing Plaintiff with ONJ[19], there is no evidence, other than Plaintiff's unsupported assertion, that Dr. Sawisch ever performed a differential diagnosis.  Indeed, Dr. Sawisch's Consultation Report merely reflects his observation that Plaintiff's necrotic bone was "consistent with a drug induced avascular necrosis of bone" and that "[t]his is a documented side effect of Aredia and Zometa."  Consultation Report, Exhibit 4 to the 2d Vecchione Decl. [DE 28-73] at 74.  The Consultation Report does not indicate that Dr. Sawisch ever considered or ruled out other potential causes of Plaintiff's ONJ. Moreover, courts have recognized that there is a distinction between an expert being able to diagnose and/or treat a condition and to give an opinion regarding causation. See Thomas, 443 Fed. Appx. at 62 (excluding expert testimony regarding causation where record only reflected that expert might have experience recognizing and treating ONJ).  Accordingly, the Court will exclude any testimony from Dr. Sawisch regarding the

---

[18]   The page and line designations from the cited portions of the deposition transcript are 41:22-42:4.

[19]   The Court cannot agree with this argument based upon the limited deposition testimony provided by Defendant.  It certainly appears that Dr. Sawisch agreed that he was unable to state how long Plaintiff suffered exposed bone. See Sawisch Dep. [DE 28-70] at 60-61 (corresponding to 50:24-51:5).  But he never stated that he believed that he had misdiagnosed Plaintiff or that Plaintiff did not have ONJ. See id.

12

specific causation of Plaintiff's ONJ.[20]

### C. Retained Expert Dr. Vishtasb Broumand May Offer an Opinion on the Causation of Plaintiff's ONJ.

Finally, Defendant moves to exclude any causation testimony from Plaintiff's retained expert, Dr. Vishtasb Broumand.  Motion at 12.  Defendant argues that Dr. Broumand should be precluded from testifying because he failed to employ a reliable methodology to form his causation opinion and he cannot rule out other potential causes of Plaintiff's ONJ.  Defendant's Mem. at 15-16.  In opposition, Plaintiff contends that Dr. Broumand is qualified to testify that Aredia and Zometa caused Plaintiff's ONJ, he performed a differential diagnosis to determine the likely cause of Plaintiff's ONJ, and that Defendant's arguments go to the weight rather than the admissibility of Dr. Broumand's testimony.  Response at 173.

Defendant first contends that Dr. Broumand should be precluded from testifying about causation because he did not review the necessary documentation to conclude that Plaintiff's ONJ was caused by his use of Aredia and/or Zometa.  Id. at 32.  Plaintiff does not directly address this argument, instead arguing that Dr. Broumand is qualified to offer a causation opinion.  Response at 183-85.  The Court notes that Defendant has not challenged Dr. Broumand's qualifications to serve as an expert witness on causation in this matter.  Rather, Defendant argues that Dr. Broumand's failure to

---

[20] Although the Court finds that Dr. Sawisch may not testify regarding the cause of Plaintiff's ONJ, this does not preclude Dr. Sawisch from testifying regarding his diagnosis and treatment of Plaintiff, including his observation that Plaintiff's necrotic bone was "consistent with a drug induced avascular necrosis of bone" and that "[t]his is a documented side effect of Aredia and Zometa."  See Consultation Report, Exhibit 4 to the 2d Vecchione Decl. [DE 28-73] at 74.

employ a reliable methodology, including consideration of all necessary materials, renders his opinion inadmissible. See Defendant's Mem. at 31. After reviewing the relevant record, however, the Court declines to exclude Dr. Broumand's testimony on this basis. Dr. Broumand is clearly qualified to render an opinion on the cause of Plaintiff's ONJ. See, e.g., Curriculum Vitae of Vishtasb Broumand, D.M.D, D.D.S., Exhibit 10 to Defendant's Motion [DE 28-70] at 143-149 (reflecting that from 2004-2010 Dr. Broumand has conducted research on bisphosphonate induced osteonecrosis of the jaw, and has published articles and lectured on bisphosphonate induced ONJ). To the extent there are inconsistencies between the materials Dr. Broumand said he considered in his expert report and what he reported considering during his deposition testimony, the Court finds that this goes to the weight rather than the admissibility of his opinion. See Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) ("[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration.... It is the role of the adversarial system, not the court, to highlight weak evidence.") (emphasis in original) (internal quotations and citations omitted). Defendant may cross examine Dr. Broumand regarding any inconsistencies presented in his expert report.[21] See Daubert, 509 U.S. at 596

---

[21] For example, Defendant is free to cross examine Dr. Broumand regarding his conclusion that Plaintiff met the AAOMS definition of ONJ by having exposed bone for a period of at least eight weeks. See Defendant's Mem. at 21. Although at his deposition, Dr. Broumand conceded that there was no record of Plaintiff having exposed bone until August 19, 2005 and his only knowledge that Plaintiff continued to suffer from exposed bone came from Plaintiff's counsel, he also stated that the record from Dr. Sawisch indicated a one and a half centimeter area of exposed bone and he was "confident from [his] clinical experience that wouldn't happen overnight" and that the condition would have taken at least two weeks to develop. Deposition of Vistash

("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Defendant next argues that Dr. Broumand did not perform a proper differential diagnosis because he failed to rule out other potential causes of ONJ such as osteomyelitis of the jaw and Plaintiff's multiple myeloma.  Defendant's Mem. at 35.  In response, Plaintiff first argues that a differential diagnosis is a reliable method to determine causation.  Response at 185.[22]  Plaintiff also argues that in his report and deposition, Dr. Broumand did in fact rule out other possible causes of Plaintiff's ONJ.  Response at 188.  Finally, Plaintiff contends that any failure of Dr. Broumand to rule out osteomyelitis or other causes of Plaintiff's ONJ goes to the weight rather the admissibility of Dr. Broumand's causation testimony.  Id. at 190-91.

Where an expert purports to have conducted a differential diagnosis, an expert's opinion is sufficiently reliable if the expert (1) identifies and considers factors which could be the "sole cause of the plaintiff's injury" and (2) provides a "reasonable

---

Broumand [DE 39-1] ("Broumand Dep.") at 64:1:18.  Accordingly, because it appears that Dr. Broumand had a reasonable factual basis to conclude that Plaintiff met the AAOMS definition of ONJ, any inconsistency in his opinion goes to its weight rather than admissibility.  See Broumand Dep. at 63:14-17 (reflecting that eight weeks of exposed bone was possible because Plaintiff had pain for approximately four weeks before he saw Dr. Sawisch).

[22]   This argument once again misses the mark: the issue before the Court is not whether a differential diagnosis is a reliable method of establishing causation, but whether Dr. Broumand performed a reliable differential diagnosis under the standard set forth by the Eleventh Circuit.  See Defendant's Mem. at 33 (noting that "[a] differential diagnosis may be an accepted methodology for making a determination of specific medical causation, but only when done properly.").  Accordingly, whether a differential diagnosis is a proper method for establishing causation will not be addressed by this Court.

explanation" for his conclusion that other potential causes are not the sole cause of the plaintiff's injury.  Harvey v. Novartis Pharm. Corp., – F. Supp. 2d – , No. 2:06-CV-114-VEH, 2012 WL 4713097, at *3 (N.D. Ala. Oct. 4, 2012) (citing Guinn v. AstraZeneca Pharm., LP, 602 F.3d 1245, 1253 (11th Cir. 2010)).  The Eleventh Circuit has held, however, that "an expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient."  Guinn, 602 F.3d at 1253 (citing McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1253 (11th Cir. 2005)). "Although a reliable differential diagnosis need not rule out all possible alternative causes, it must at least consider other factors that could have been the sole cause of the plaintiff's injury."  Guinn, 602 F.3d at 1253.

Here, Dr. Broumand's expert report reflects that he did consider other potential causes of Plaintiff's ONJ.  For example, Dr. Broumand's expert report states that he considered osteomyelitis as a potential cause of Plaintiff's ONJ, but ruled it out because Plaintiff's "condition continued to worsen and he failed to respond to conventional medical therapy as the pain in area tooth #18 in the left mandible improved although he continued to have exposed bone with no infectious etiology whatsoever."  Expert Report of Dr. Vishtasb Broumand, MD, DMD, Exhibit 10 to Defendant's Motion [DE 28-70] at 140.  The report also reflects that he observed that Plaintiff had "never had a history of head and neck radiation to the maxillofacial region" and that he rejected multiple myeloma as a potential cause because patients with multiple myeloma do not suffer "avascular necrosis of the mandible."  Id. at 141.

Dr. Broumand's deposition testimony also reflects that he considered and rejected other causes of Plaintiff's ONJ.  For example, when asked about the impact

16

that multiple myeloma, diabetes, and AIDS may have had upon Plaintiff's ONJ, Dr. Broumand described these conditions as "predisposing factors" and opined that "they are not causative." Broumand Dep. at 90:11-18. He also stated that he had never seen any patients who were on thalidomide that presented with an "exposed, painful jaw bone." Id. at 92:13-18. Dr. Broumand testified that he also believed that Plaintiff's ONJ predated any infection he may have had because "[i]n most cases the necrosis comes first because most patients that are on the IV bisphosphonates, 60 percent of them have asymptomatic exposed bone. The necrotic bone is not painful and it only becomes painful once they become secondarily infected in most cases." Id. at 106:5-14. Upon further questioning from Defendant's counsel whether an infection could have caused Plaintiff's ONJ, he reiterated that "[t]he infection shouldn't lead to necrosis. The necrosis should lead to infection. . . . [B]ut in all medical probability, the infection came before the necrosis." Id. at 106:24-107:5. When asked about whether the drugs Plaintiff took to treat his HIV could have caused him to develop ONJ, Dr. Broumand stated that "I have not seen any patients that are on those medications develop exposed bone in their mandible or maxilla for that matter." Id. at 140:20-141:8. Accordingly, the Court finds that Dr. Broumand's differential diagnosis meets the Eleventh Circuit standard for admissibility because he both considered other potential causes of Plaintiff's ONJ and determined that Plaintiff's use of Aredia and Zometa was the likely cause. See Guinn, 602 F.3d at 1253 (noting that "[a]lthough a reliable differential diagnosis need not rule out all possible alternative causes, it must at least consider other factors that could have been the sole cause of the plaintiff's injury."). Plaintiff is free to cross examine Dr. Broumand regarding how and why he concluded

that Plaintiff's ONJ was caused by his use of Aredia and Zometa.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Novartis Pharmaceutical Corporation's <u>Daubert</u> Motion to Exclude Causation Testimony of Plaintiff's Expert Witnesses in the <u>Taylor</u> Case [DE 28-70] at 12-14 is **GRANTED IN PART AND DENIED IN PART**.  Dr. Todd Sawisch, Dr. James Driscoll, Dr. Irving Bratt, Dr. Nelson Zide, Dr. Kevin Ohayon, Dr. Howard Cunningham, and Dr. Frederick Wittlin may not offer testimony regarding the specific causation of Plaintiff's ONJ.  Dr. Vistashb Broumand may testify regarding the specific causation of Plaintiff's ONJ.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 7th day of January, 2013.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.